**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF IOWA**
**CEDAR RAPIDS DIVISION**

| | |
|---|---|
| TRUSTEES OF THE I.B.E.W. LOCAL 405 HEALTH & WELFARE FUND; | |
| | |
| TRUSTEES OF THE I.B.E.W. LOCAL 405 DEFERRED SAVINGS FUND a/k/a I.B.E.W. LOCAL 405 DEFERRED SAVINGS PLAN; | |
| | |
| TRUSTEES OF THE I.B.E.W. LOCAL 405 EDUCATION FUND (Joint Apprenticeship Training Fund); | No. 07-CV-39-LRR |
| | **ORDER** |
| TRUSTEES OF THE NATIONAL ELECTRICAL BENEFITS FUND (NEBF); | |
| | |
| LOCAL UNION NO. 405 INTERNATIONAL BROTHERHOOD OF ELECTRICAL WORKERS; and | |
| | |
| NATIONAL ELECTRICAL CONTRACTORS ASSOCIATION INCORPORATED (NECA); | |
| Plaintiffs, | |
| vs. | |
| TICHY ELECTRIC CO., INC. | |
| Defendant. | |

_____

*TABLE OF CONTENTS*

**I.    INTRODUCTION** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **2**

**II.   BACKGROUND** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **2**

III.   **THE MERITS** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **8**

    A.    *Promissory Note* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **14**

    B.    *Unpaid Contributions* . . . . . . . . . . . . . . . . . . . . . . . . . . **16**

    C.    *Interest on Unpaid Contributions* . . . . . . . . . . . . . . . . . . **18**

    D.    *Penalties on Delinquent Contributions* . . . . . . . . . . . . . . **22**

    E.    *Attorney Fees & Costs* . . . . . . . . . . . . . . . . . . . . . . . . . **23**
        1.    *Attorney fees* . . . . . . . . . . . . . . . . . . . . . . . . . . . **23**
        2.    *Costs* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **25**

IV.   **CONCLUSION** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **26**

## I.  INTRODUCTION

Before the court is Plaintiffs'[1] Motion for Entry of Judgment for Money Damages Upon the Defendant's Default Pursuant to Rule 55(b)(2) ("Application") (docket no. 9) and Motion for Attorney Fees ("Motion") (docket no. 10).

## II.  BACKGROUND

On May 7, 2007, Plaintiffs filed a Complaint against Defendant Tichy Electric Co., Inc. The Complaint contains three counts. In Count 1, the Trustees of the I.B.E.W. Local 405 Health & Welfare Fund ("Health & Welfare Fund") and the Trustees of the I.B.E.W. Local 405 Deferred Savings Fund a/k/a I.B.E.W Local 405 Deferred Savings Plan ("Savings Fund") allege failures to pay amounts due under a promissory note, as well as contributions due under a collective bargaining agreement, pursuant to 29 U.S.C. § 1132(g)(2)(A). The Health & Welfare Fund and the Savings Fund also seek penalties, interest and attorney fees and costs, pursuant to 29 U.S.C. § 1132(g)(2)(B)-(D).

---

[1] The "Plaintiffs" collectively are Trustees of the I.B.E.W. Local 405 Health & Welfare Fund; Trustees of the I.B.E.W. Local 405 Deferred Savings Fund a/k/a I.B.E.W Local 405 Deferred Savings Plan; Trustees for the I.B.E.W. Local 405 Education Fund (Joint Apprenticeship Training Fund); Trustees of the National Electrical Benefits Fund (NEBF); Local Union No. 405 International Brotherhood of Electrical Workers; and National Electrical Contractors Association, Incorporated (NECA).

In Count 2, the Trustees for the I.B.E.W. Local 405 Education Fund (Joint Apprenticeship Training Fund) ("Education Fund") and Trustees of the National Electrical Benefits Fund (NEBF) ("NEBF") allege failures to pay contributions due under a collective bargaining agreement, pursuant to 29 U.S.C. § 1132(g)(2)(A). The Education Fund and NEBF also seek penalties, interest and attorney fees and costs, pursuant to 29 U.S.C. § 1132(g)(2)(B)-(D).

In Count 3, Local Union No. 405 International Brotherhood of Electrical Workers ("Local 405") and National Electrical Contractors Association, Incorporated (NECA) ("NECA") allege failures to pay contributions due under a collective bargaining agreement, pursuant to 29 U.S.C. § 185. Local 405 and NECA also seek interest and attorney fees and costs under a collective bargaining agreement and as provided by law.

On May 10, 2007, Plaintiffs served Defendant at its place of business by delivering a copy of the Summons and Complaint, at 1014 11th Street NE, Cedar Rapids, Iowa. Defendant has not filed an answer to the Complaint.

On July 10, 2007, Plaintiffs filed "Plaintiffs' Application for Entry of Default Against the Defendant Pursuant to Rule 55(a) FRCP" (docket no. 7). On July 11, 2007, the Clerk of Court entered default. *See* Fed. R. Civ. P. 55(a) ("When a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend, and that failure is shown by affidavit or otherwise, the clerk must enter the party's default."); *see also* Fed. R. Civ. P. 7(a) (requiring a defendant to file an answer).

On August 10, 2007, Plaintiffs filed the Application and the Motion. On August 24, 2007, Plaintiffs filed a Supplement to the Motion ("Supplement"). On December 20, 2007, the court held an evidentiary hearing ("Hearing") on the Application and Motion.

Plaintiffs request that default judgment be entered against Defendant. The Application and the Motion together seek five categories of relief. First, Plaintiffs seek judgment on promissory note claims related to delinquent contributions in the amount of

$13,553.17. Second, Plaintiffs seek judgment on delinquent contributions in the amount of $3,332.90 to the Health & Welfare Fund, $2,237.27 to the Savings Fund, $704.41 to the Education Fund, $1,209.90 to NEBF, $622.21 to Local 405 and $601.68 to NECA. Third, Plaintiffs seek interest upon these delinquent contributions. Fourth, Plaintiffs seek penalties for these delinquent contributions as described in the governing agreements and as limited by 29 U.S.C. § 1132(g)(2)(C)(ii). Fifth, Plaintiffs seek attorney fees and costs pursuant to Federal Rule of Civil Procedure 54(d)(2) and 29 U.S.C. § 1132(g)(2)(D), as well as the governing agreements.

To prove their damages under the Application, Plaintiffs filed three affidavits. First, Plaintiffs attached the affidavit of Vanessa Taylor ("Taylor Affidavit") to their Application. Taylor testifies:

> 1.    That [she is] an accountant-union division of Employee Group Services Limited dba Auxiant which is the third-party administrator for the [Health & Welfare Fund, the Savings Fund, and the Local 405], all of which are organizations and entities and beneficiaries under the Collective Bargaining Agreements between [Local 405] and the Cedar Rapids/Iowa City Division Iowa Chapter, National Electrical Contractors Association for the periods covering June 1, 2004 through May 31, 2006 [("2004 Collective Bargaining Agreement")] and June 1, 2006 through May 31, 2009 [("2006 Collective Bargaining Agreement," and collectively, "Collective Bargaining Agreements")]. These Collective Bargaining Agreements apply to all firms that have signed a Letter of Assent to be bound thereby. [Defendant] is a firm that has executed Letters of Assent thus obligating it to the terms of the aforesaid Collective Bargaining Agreements. Excerpts from the aforesaid Collective Bargaining Agreements and the Letters of Assent that were executed and remain in full force and effect are attached [to the Taylor Affidavit as Exhibit A]. . . .

> 3.    That [Defendant] was at and before the filing of [the Taylor Affidavit], and still is, justly and truly indebted

to [the Health & Welfare Fund, the Savings Fund, and the Local 405], with respect to the Complaint filed herein as follows:

a.      . . . [Defendant] provided a promissory note in settlement of its obligations to pay certain contributions and penalties in light of its failure to timely pay its required contributions under the Collective Bargaining Agreement . . . for the reporting months of July, August, and September 2005. The original promissory note [("2005 Promissory Note")] was attached to the Complaint as Exhibit "A" and was superseded by the promissory note [("2006 Promissory Note")] that was attached to the Complaint as Exhibit "B" [(collectively, "Promissory Note")].

Because of [Defendant's] failure to comply with the terms of the aforesaid [Promissory Note], [Defendant] has now become obligated under the terms of that [Promissory Note] to [the Health & Welfare Fund and the Savings Fund in the amount of $13,553.17].

Interest upon the sum of $13,553.17 is to be imposed pursuant to the terms of the aforesaid [Promissory Note] at the rate of 10% per annum from the date of Defendant's default on the [Promissory Note], which occurred on April 19, 2007.

b.      [Defendant owes delinquent contributions to the Health & Welfare Fund, pursuant to the Collective Bargaining Agreements, for January, February and March of 2007 in the amount of $3,332.90].

c.      [Defendant owes delinquent contributions to the Savings Fund, pursuant to the Collective Bargaining Agreements for January, February and March of 2007 in the amount of $2,237.27].

d.      [Defendant owes delinquent contributions to the Local 405, pursuant to the Collective Bargaining Agreements

for January, February and March of 2007 in the amount of $622.21].

e.    [Defendant owes penalties to the Health & Welfare Fund and the Savings Fund pursuant to the 2006 Collective Bargaining Agreement for delinquent contributions in January, February and March of 2007 in the amount of $50 per day from February 25, 2007 for the January contribution, $50 per day from March 25, 2007 for the delinquent February contribution and $50 per day from April 25, 2007 for the delinquent March contribution]. . . .

Taylor Affidavit at 1-3 (docket no. 9-2).

Second, Plaintiffs attach the Affidavit of Pat Swigert ("Swigert Affidavit") to their Application.  Swigert testifies:

1.    That [she is] the assistant fund administrator employed by the Iowa Chapter Receiving Trust Fund which is the third-party administrator for the [Education Fund, NEBF and NECA], all of which are organizations and entities and beneficiaries under the Collective Bargaining Agreements between [Local 405] and the Cedar Rapids/Iowa City Division Iowa Chapter, National Electrical Contractors Association for the periods covering June 1, 2004 through May 31, 2006 and June 1, 2006 through May 31, 2009.  These Collective Bargaining Agreements apply to all firms that have signed a Letter of Assent to be bound thereby. [Defendant] is a firm that has executed Letters of Assent thus obligating it to the terms of the aforesaid Collective Bargaining Agreements.  Excerpts from the aforesaid Collective Bargaining Agreements and the Letters of Assent that were executed and remain in full force and effect are attached [to the Swigert Affidavit as Exhibit A]. . . .

3.    That [Defendant] was at and before the filing of [the Swigert Affidavit], and still is, justly and truly indebted

6

to [the Education Fund, NEBF and NECA], with respect to the Complaint filed herein as follows:

a.    [Defendant owes delinquent contributions to the Education Fund, pursuant to the Collective Bargaining Agreements, for October and November of 2004 and February and March of 2007 in the amount of $704.41].

b.    [Defendant owes delinquent contributions to NEBF, pursuant to the Collective Bargaining Agreements, for October and November of 2004 and February and March of 2007 in the amount of $1,209.90].

c.    [Defendant owes delinquent contributions to NECA, pursuant to the Collective Bargaining Agreements, for October and November of 2004 and February and March of 2007 in the amount of $601.68]. . . .

Swigert Affidavit at 1-2 (docket no. 9-3).

Third, in support of their claim for prejudgment interest, Plaintiffs attach the Affidavit of Mark H. Rettig ("Rettig Affidavit") to their Application. In the Rettig affidavit, Rettig, as attorney for Plaintiffs, testifies that he has examined the Taylor Affidavit, the Swigert Affidavit and the Collective Bargaining Agreements. Pursuant to the Collective Bargaining Agreements, contributions are due by the 25th day of the month following the calendar month of the required contribution, when penalties begin to accrue. He states that, pursuant to Section 2.29 of the 2004 Collective Bargaining Agreement and Section 2.28 of the 2006 Collective Bargaining Agreement, interest accrues upon unpaid contributions, and, in any case, 29 U.S.C. § 1132(g)(2)(B) mandates the accrual of interest upon any delinquent contributions. However, because the Collective Bargaining Agreements provide no rate of interest, Rettig notes that, pursuant to § 1132(g)(2), if no rate is established by the governing plan, the rate set forth in 26 U.S.C. § 6621 shall apply. Rettig testifies, and supports with documentation from the Internal Revenue Service

website, that the rates set for the applicable periods are 5.00% for October of 2004; 5.00% for November of 2004; 8.00% for January of 2007; 8.00% for February of 2007; and 8.00% for March of 2007. Therefore, Rettig concludes, interest applies to the delinquent contributions and penalties as follows: (1) 5.00% on the unpaid contributions of October of 2004 from November 25, 2004; (2) 5.00% on the unpaid contributions of November of 2004 from December 25, 2004; (3) 8.00% on the unpaid contributions of January of 2007 from February 25, 2007; (4) 8.00% on the unpaid contributions of February of 2007 from March 25, 2007; and (5) 8.00% on the unpaid contributions of March of 2007 from April 25, 2007.

To prove Plaintiffs' attorney fees in the Motion, Rettig again supplies an affidavit ("Fee Affidavit") and offers the affidavit of Kay M. Johansen ("Johansen Affidavit"), an ERISA attorney practicing in the Cedar Rapids, Iowa, area. The Fee Affidavit proposes a $175 per hour rate for Rettig and his partner Joseph E. Day. The Fee Affidavit proposes a $150 per hour rate for associate Yara Halloush. According to the Fee Affidavit, Day expended 3.80 hours on the case, resulting in attorney fees of $665.00; Rettig expended 29.90 hours, resulting in attorney fees of $5,232.50; and Halloush expended 2.90 hours, resulting in attorney fees of $435.00. Attorney fees thus amount to $6,332.50. The Fee Affidavit itemizes expenses and costs totaling $428.00. The Johansen Affidavit attests to the reasonableness of the per hour rates for the various attorneys, the attorney time expended for the case and the attorney time of $6,332.50. The Johansen Affidavit does not take a position on the expenses and costs incurred. The Supplement describes services rendered by Rettig subsequent to July 31, 2007, namely, 5.95 hours at $175.00 per hour for total fees of $1,041.25. The Johansen Affidavit does not consider the fees described in the Supplement.

## III.  THE MERITS

Plaintiffs' Complaint is founded upon 29 U.S.C. §§ 185 and 1145. Section 185, part of the Labor Management Relations Act of 1947 ("LMRA"), provides for any "labor

organization representing employees in an interstate commerce" the privilege to sue an employer, with which it has a contract, for breach in federal court, regardless of the diversity of the parties or the amount in controversy. 29 U.S.C. § 185(a). "In passing [§ 185], Congress was interested in the enforcement of collective bargaining contracts since it would promote a higher degree of responsibility upon the parties to such agreements, and will thereby promote industrial peace." *Drake Bakeries, Inc. v. Local 50, Am. Bakery & Confectionery Workers Int'l., AFL-CIO*, 370 U.S. 254, 263 (1962) (quotations and citation omitted).

Similarly, Section 1145, a part of the Employee Retirement Income Security Act of 1974 ("ERISA"), provides:

> Every employer who is obligated to make contributions to a multiemployer plan under the terms of the plan or under the terms of a collectively bargained agreement shall, to the extent not inconsistent with law, make such contributions in accordance with the terms and conditions of such plan or such agreement.

29 U.S.C. § 1145. ERISA provides a private right of action to the trustees of a plan to enforce § 1145 when an employer violates its obligations under the plan or a collective bargaining agreement. 29 U.S.C. § 1132(d)(1).

Because Defendant failed to answer Plaintiffs' Complaint, Defendant's liability to Plaintiffs for violations of 28 U.S.C. §§ 185(a) and 1145 is established. "If the court determines that the defendant is in default, his liability to the plaintiff is deemed established and the plaintiff is not required to establish his right to recover. The allegations of the complaint except as to the amount of damages are taken as true." *Brown v. Kenron Aluminum & Glass Corp.*, 477 F.2d 526, 531 (8th Cir. 1973) (internal quotation omitted); *see also Flynn v. Williams Masonry*, 233 F.R.D. 176, 177 (D.D.C. 2005) (finding damages where court had entered default in an ERISA case and holding that "[t]he only issue before the Court . . . is the amount of damages owed by the defendants to the plaintiffs") (citing *Jackson v. Beech*, 636 F.2d 831, 835 (D.C. Cir. 1980)).

Paragraph 8 under Count I of Plaintiffs' Complaint alleges that Defendant was a party to the Collective Bargaining Agreements. Paragraphs 14-23 under Count I allege that Defendant was obligated to make contributions or payments in accordance with the terms of the Collective Bargaining Agreements and the Promissory Note, but Defendant failed to make those contributions and payments to Plaintiffs Health & Welfare Fund and Savings Fund. Paragraphs 9-13[2] under Count II allege that Defendant was obligated to make contributions in accordance with the terms of the Collective Bargaining Agreements, but Defendant failed to make those contributions to Plaintiffs Education Fund and NEBF. Paragraphs 10-14 under Count III allege that Defendant failed to make contributions required by the Collective Bargaining Agreements to Plaintiffs Local 405 and NECA. These allegations are established as true for purposes of this order. *Brown*, 477 F.2d at 531.

However, the court is not required to accept the allegations of Plaintiffs' Complaint regarding damages as true. *Id.* "[I]n civil litigation between private parties, a party entitled to judgment by default is required to prove the amount of damages that should be awarded." *Oberstar v. Fed. Deposit Ins. Corp.*, 987 F.2d 494, 505 n.9 (8th Cir. 1993). Plaintiffs must prove their damages by a preponderance of the evidence. *See Everyday Learning v. Larson*, 242 F.3d 815, 818 (8th Cir. 2001) (affirming district court's decision not to award damages after default judgment hearing where damages were "speculative and not proven by a fair preponderance of the evidence"). As a general rule, upon default a court may establish damages "by taking evidence when necessary or by computation from facts of record, to fix the amount which the plaintiff is lawfully entitled to recover and give judgment accordingly." *Pope v. United States*, 323 U.S. 1, 12 (1944). The court must afford Plaintiffs all reasonable inferences from the evidence offered. *Au Bon Pain Corp.*

---

[2] Count II of the Complaint omits a Paragraph 10, *i.e.*, the paragraph following Paragraph 9 is Paragraph 11.

*v. Artect, Inc.*, 653 F.2d 61, 65 (2d Cir. 1981); *Int'l Painters & Allied Trades Indus. Pension Fund v. R.W. Amrine Drywall Co.*, 239 F. Supp. 2d 26, 30 (D.D.C. 2002).

Case law in the ERISA context underscores the general rule. In determining the amount of damages for a default judgment in an ERISA case brought by a plan against an employer, the court "may rely on detailed affidavits or documentary evidence to determine the appropriate sum for the default judgment." *Int'l Painters*, 239 F. Supp. 2d at 30 (citing *United Artists Corp. v. Freeman*, 605 F.2d 854, 857 (5th Cir. 1979)).

According to Plaintiffs' Application and Motion, part of Plaintiffs' damages claim is predicated upon 29 U.S.C. § 185(a). Under § 185, it is the "injured party who has the burden of proving the extent and amount of the damages." *Foam & Plastics Div., Tenneco Chem., Inc. v. Gen. Drivers & Helpers Local Union 401, Int'l Bhd. of Teamsters*, 520 F.2d 946, 948 (3d Cir. 1975). Lawsuits under § 185 are "governed by the terms of the contract," *e.g.*, a collective bargaining agreement. *Stallcop v. Kaiser Found. Hosp.*, 820 F.2d 1044, 1048 (9th Cir. 1987); *see also Rabalais v. Dresser Indus., Inc.*, 566 F.2d 518, 519 (5th Cir. 1978) (holding that claimed violation of collective bargaining agreement is bound by terms of that agreement). Section 185 also requires that the court "interpret the words in a [collective bargaining agreement] to give them their ordinary and reasonable meaning." *Penn Packing Co., Inc. v. Amalgamated Meat Cutters & Butcher Workmen of N. Am. Local 195*, 497 F.2d 888, 891 (3d Cir. 1974).

It is within the court's discretion whether to award prejudgment interest in a § 185 action. *Int'l Ass'n. of Bridge, Structural & Ornamental Iron Workers, Local Union No. 103, AFL-CIO v. Higdon Constr. Co., Inc.*, 739 F.2d 280, 283 (7th Cir. 1984); *see also Blau v. Lehman*, 368 U.S. 403, 414 (1962) (noting that in absence of statutory directive, award of prejudgment interest is within discretion of the court). "In awarding prejudgment interest it is appropriate for the [c]ourt to allow prejudgment interest at such a rate as will compensate [§ 185 plaintiffs] for the delay in the receipt of their money." *Employer-*

*Teamsters Joint Council No. 84, Health & Welfare Fund v. Weatherall Concrete, Inc.*, 468 F. Supp. 1167, 1171 (S.D.W.Va. 1979); *see also Colon Velez v. P.R. Marine Mgmt., Inc.*, 957 F.2d 933, 941 (1st Cir. 1992) (holding that prejudgment interest appropriately applies to "tangible losses" in successful § 185 suit).

In the Eighth Circuit, it is within the court's discretion to award attorney fees and costs to the prevailing party. *Iowa Beef Processors, Inc. v. Amalgamated Meat Cutters & Butcher Workmen of N. Am., AFL-CIO*, 597 F.2d 1138, 1148 (8th Cir. 1979); *see also Gen. Drivers & Helpers Union Local No. 554 v. Young & Hay Transp. Co.*, 522 F.2d 562, 568 (8th Cir. 1975) ("An award of attorneys fees in a suit brought under [§ 185] constitutes an appropriate item of damage to be awarded by courts in the enforcement of national labor policy . . . ." (Citations and quotations omitted.)); *United Steelworkers of Am., AFL-CIO v. Butler Mfg. Co.*, 439 F.2d 1110, 1112-13 (8th Cir. 1971) (holding that attorney fees are "an appropriate item of damage" in a case brought pursuant to § 185).

According to Plaintiffs' Application and Motion, the remaining part of Plaintiffs' damages claim is predicated upon 29 U.S.C. § 1132(g)(2). That provision of ERISA provides:

> (2) In any action under this subchapter by a fiduciary for or on behalf of a plan to enforce section 1145 of this title in which a judgment in favor of the plan is awarded, the court shall award the plan—
>
> (A) the unpaid contributions,
> (B) interest on the unpaid contributions,
> © an amount equal to the greater of—
> > (I) interest on the unpaid contributions, or
> > (ii) liquidated damages provided for under the plan in an amount not in excess of 20 percent (or such higher percentage as may be permitted under Federal or State law) of the amount determined by the court under subparagraph (A),
>
> (D) reasonable attorney's fees and costs of the action, to be paid by the defendant, and

(E) such other legal or equitable relief as the court deems appropriate.

For purposes of this paragraph, interest on unpaid contributions shall be determined by using the rate provided under the plan, or, if none, the rate prescribed under section 6621 of Title 26.

29 U.S.C. § 1132(g)(2).

As the plain language of the § 1132(g)(2) makes clear, once liability under § 1145 is established, upon proper proof, the court is required to award Plaintiffs damages for: (1) the unpaid contributions, (2) interest on the unpaid contributions, (3) an amount equal to the interest on the unpaid contributions or liquidated damages provided under the Plan and (4) reasonable attorney fees and the costs of the action. 29 U.S.C. § 1132(g)(2); *see United Retail & Wholesale Employees Teamsters Union Local No. 115 Pension Plan v. Yahn*, 787 F.2d 128, 134 (3d Cir. 1986) ("The language of [§1132(g)(2)] is mandatory."), *aff'd by an equally divided court*, *Pension Benefit Guar. Corp. v. United Retail & Wholesale Employees Teamsters Union Local No. 115 Pension Plan*, 481 U.S. 735, 735 (1987); *accord Int'l Painters*, 239 F. Supp. 2d at 31 ("When a court awards a default judgment against a defendant for contributions owed under a collective bargaining agreement, ERISA provides that the court must award: (1) the unpaid contributions; (2) interest on the unpaid contributions; (3) liquidated damages; and (4) reasonable attorney's fees and costs of the action." (Footnotes and citations omitted.)).[3] "The legislative history of these provisions explains that Congress added these strict remedies to give employers a strong incentive to honor their contractual obligations to contribute and to facilitate the

---

[3] The court may also award other legal or equitable relief, 29 U.S.C. § 1132(g)(2), such as an injunction requiring a defendant to cooperate with an audit of its records. *See, e.g., Int'l Painters*, 239 F. Supp. 2d at 31 (citing *Mason Tenders Dist. Council Welfare Fund v. Bold Constr. Co.*, No. 01CIV0641LTSTHK, 2002 WL 1788024, at *3 (S.D.N.Y. Aug. 1, 2002)). No such additional relief is requested here.

collection of delinquent accounts." *Laborers Health & Welfare Trust Fund for N. Cal. v. Advanced Lightweight Concrete Co.*, 484 U.S. 539, 547 (1988).

Based on the relevant law, the court shall address the five categories of damages propounded in the Application and Motion.

### A. Promissory Note Payments

According to the Taylor Affidavit, "[Defendant] has now become obligated under the terms of that [Promissory Note] to [the Health & Welfare Fund and the Savings Fund in the amount of $13,553.17]." Standing alone, the Taylor Affidavit is evidence of Plaintiffs' damages. The Taylor Affidavit references the Collective Bargaining Agreements and the Promissory Note, each of which supports Taylor's calculation of the total indebtedness. At the Hearing, Plaintiffs provided a calculation of the amounts paid under the Promissory Note as well as the amounts that remain unpaid ("Promissory Note Account Statement"). Plaintiffs' Hearing Ex. 7 (docket no. 13). Taylor testified as to the calculations' accuracy.

It is crucial, however, to note that the Promissory Note is not governed by ERISA; although the Promissory Note makes reference to the Collective Bargaining Agreements, the Promissory Note is not itself part of the agreements. Rather, as explained in the Taylor Affidavit, Defendant "provided a promissory note in settlement of its obligations to pay certain contributions and penalties in light of its failure to pay its required contributions under the Collective Bargaining Agreement . . . for the reporting months of July, August, and September 2005." Taylor Affidavit at 2. In other words, the Promissory Note, Plaintiffs state, is a settlement of alleged delinquent contributions.

Although the amount of the Promissory Note judgment is not governed by ERISA, the law generally governing default still applies. The court is empowered to establish Plaintiffs' Promissory Note damages "by taking evidence when necessary or by computation from facts of record, to fix the amount which the plaintiff is lawfully entitled

to recover and give judgment accordingly." *Pope*, 323 U.S. at 12. As to the Promissory Note, the court must afford Plaintiffs all reasonable inferences from the evidence offered. *Au Bon Pain*, 653 F.2d at 65; *Int'l Painters*, 239 F. Supp. 2d at 30.

The Taylor Affidavit, coupled with the calculations in the Promissory Note Account Statement, support Plaintiffs' claim for amounts due under the Promissory Note. First, Defendant owes the Health & Welfare Fund and the Savings Fund $4,203.17 in unpaid principal on the Promissory Note. Second, the Promissory Note expressly states that if Defendant fails to make any payments under the Promissory Note or the 2004 Collective Bargaining Agreement, "penalties set forth in the [2004] Collective Bargaining Agreement for late payment of contributions for July, August and September of 2005" shall apply. Complaint, Ex. B. Section 2.29(c) of the 2004 Collective Bargaining Agreement provides for penalties of $50.00 per working day after the 25th day of the month following the month a contribution is due. The Taylor Affidavit calculates the penalties for July of 2005 as $4,150, based upon a $50.00 per working day penalty for the 83 working days between August 25, 2005 and December 22, 2005, the execution date of the 2005 Promissory Note. The Taylor Affidavit calculates the penalties for August of 2005 as $3,150, based upon a $50.00 per working day penalty for the 63 working days between September 25, 2005 and December 22, 2005. The Taylor Affidavit calculates the penalties for September of 2005 as $2,050, based upon a $50.00 per working day penalty for the 41 working days between October 25, 2005 and December 22, 2005.

According to the Promissory Note, interest accrues upon the unpaid principal and penalties at a rate of 10% per year from the date of default. The Health & Welfare Fund and the Savings Fund declared Defendant's default, and notified Defendant of such default, on April 19, 2007. Based upon unpaid principal and penalties of $13,553.17, the Health & Welfare Fund and the Savings Fund are therefore entitled to, interest in the amount of $1,009.84 under a rate of 10% per year, accruing between April 19, 2007 and January 15, 2008, the date of this Order.

Affording Plaintiffs all reasonable inferences, *see Au Bon Pain Corp.*, 653 F.2d at 65, the court finds the Health & Welfare Fund and the Savings Fund have proven that they are entitled to $14,563.01 for damages related to the Promissory Note.

### B. Unpaid Contributions

Based on the Taylor Affidavit and the Swigert Affidavit, Defendant owes each of the Plaintiffs for unpaid contributions. The Taylor Affidavit and the Swigert Affidavit are evidence of Plaintiffs' damages. Furthermore, at the Hearing, Taylor and Swigert each testified that the amounts expressed in the contribution statements prepared by Defendant, Pl.'s Hearing Exs. 10-14, are the contributions owed by Defendant to each of the Plaintiffs.

Defendant owes the Health & Welfare Fund $3,258.15, under the 2006 Collective Bargaining Agreement, for delinquent contributions for January, February and March of 2007. Defendant reported $847.87 as due to the Health & Welfare Fund for January of 2007. Pl.'s Hearing Ex. 12. Defendant reported $1,141.25 as due to the Health & Welfare Fund for February of 2007, as well as $4.85 for drug testing contributions. Pl.'s Hearing Ex. 13. Defendant reported $1,258.75 due to the Health & Welfare Fund for March of 2007, as well as $5.43 for drug testing contributions. Pl.'s Hearing Ex. 14. These unpaid amounts total $3,258.15.[4]

Defendant owes the Savings Fund $2,330.66, under the 2006 Collective Bargaining Agreement, for delinquent contributions for January, February and March of 2007. Defendant reported $723.88 as due to the Savings Fund for January of 2007. Pl.'s Hearing Ex. 12. Defendant reported $749.11 as due to the Savings Fund for February of 2007. Pl.'s Hearing Ex. 13. Defendant reported $857.67 as due to the Savings Fund for

---

[4] This amount differs from the amount expressed in the Taylor Affidavit. However, Plaintiffs' Hearing Exs. 12-14 support a total of $3,258.15, and Pl.'s Hearing Ex. 15 also calculates the amounts due to the Health & Welfare Fund as $3,258.15.

March of 2007.  Pl.'s Hearing Ex. 14.  These unpaid amounts total $2,330.66.[5]

Defendant owes the Local 405 $603.57, under the 2006 Collective Bargaining Agreement, for delinquent contributions for January, February and March of 2007. Defendant reported $158.09 as due to the Local 405 for January of 2007.  Pl.'s Hearing Ex. 12.  Defendant reported $211.58 as due to the Local 405 for February of 2007.  Pl.'s Hearing Ex. 13.  Defendant reported $233.90 as due to the Local 405 for March of 2007. Pl.'s Hearing Ex. 14.  These unpaid amounts total $603.57.[6]

Defendant owes the Education Fund $704.41, under the Collective Bargaining Agreements, for delinquent contributions for October and November of 2004 and February and March of 2007.  Defendant reported $187.94 as due to the Education Fund for October of 2004.  Pl.'s Hearing Ex. 10.  Defendant reported $302.65 as due to the Education Fund for November of 2004.  Pl.'s Hearing Ex. 11.  Defendant reported $101.68 as due to the Education Fund for February of 2007.  Pl.'s Hearing Ex. 13. Defendant reported $112.14 as due to the Education Fund for March of 2007.  Pl.'s Hearing Ex. 14.  These unpaid amounts total $704.41.

Defendant owes NEBF $1,209.90, under the Collective Bargaining Agreements, for delinquent contributions for October and November of 2004 and February and March of 2007.  Defendant reported $343.28 as due to NEBF for October of 2004.  Pl.'s Hearing Ex. 10.  Defendant reported $532.52 as due to NEBF for November of 2004.  Pl.'s Hearing Ex. 11.  Defendant reported $158.68 as due to NEBF for February of 2007.  Pl.'s Hearing Ex. 13.  Defendant reported $175.42 as due to NEBF for March of 2007.  Pl.'s Hearing Ex. 14.  These unpaid amounts total $1,209.90.

---

[5]  This amount differs from the amount expressed in the Taylor Affidavit. However, Plaintiffs' Hearing Exs. 12-14 support a total of $2,330.66, and Pl.'s Hearing Ex. 15 also calculates the amounts due to the Savings  Fund as $2,330.66.

[6]  This amount differs from the amount expressed in the Taylor Affidavit. However, Pl.'s Hearing Exs. 12-14 support a total of $603.57, and Pl.'s Hearing Ex. 15 also calculates the amounts due to the Local 405 as $603.57.

Defendant owes NECA $601.68, under the Collective Bargaining Agreements, for delinquent contributions for October and November of 2004 and February and March of 2007. The calculation is a total of general contributions, administrative maintenance fees, National Labor Management Cooperative Committee Fees and Local Labor Management Cooperative Committee Fees. Defendant reported $132.85 as due to NECA for general contributions. Pl.'s Hearing Exs. 10,11, 13 and 14. Defendant reported $270.47 as due to NECA for administrative maintenance fees. Pl.'s Hearing Exs. 10, 11, 13 and 14. Defendant reported $18.04 as due to NECA for National Labor Management Cooperative Committee Fees. Pl.'s Hearing Exs. 10, 11, 13 and 14. Defendant Reported $180.32 as due to NECA for Local Labor Management Cooperative Committee Fees. Pl.'s Hearing Exs. 10, 11, 13 and 14. These unpaid amounts total $601.68.

Affording Plaintiffs all reasonable inferences, *see Au Bon Pain Corp.*, 653 F.2d at 65, the court finds Plaintiffs have proven that they are collectively entitled to $8,708.37 for delinquent contributions. The Health & Welfare Fund, the Savings Fund, the Education Fund and NEBF are entitled to their respective unpaid contributions under ERISA. *See* 29 U.S.C. § 1132(g)(2)(A). The LMRA provides that Local 405 and NECA are entitled to their respective unpaid contributions under the Collective Bargaining Agreements. *See Stallcop*, 820 F.2d at 1048 (holding that lawsuits under § 185 are "governed by the terms of the contract," *e.g.*, a collective bargaining agreement); *see also Rabalais*, 566 F.2d at 519 (5th Cir. 1978) (holding that party to collective bargaining agreement is bound by terms of that agreement).

### C. Interest on Unpaid Contributions

Under the Collective Bargaining Agreements, all contributions must be received by the 25th day following the calendar month such contributions are due. Thereafter, interest

on the unpaid contributions accrues.[7] ERISA provides that, as to Plaintiffs Health & Welfare Fund, Savings Fund, Education Fund and NEBF ("ERISA Plaintiffs"), interest on unpaid contributions must be determined by using a "rate provided under the plan, or, if none, the rate prescribed under section 6621 of Title 26." 29 U.S.C. § 1132(g)(2). The ERISA Plaintiffs note that no portion of the Plan sets a rate for interest on unpaid contributions, and the court can find none. Pursuant to 26 U.S.C. § 6621, the applicable rate is the federal short-term rate plus three percentage points. 26 U.S.C. § 6621(2) (setting underpayment rate). These federal short-term rates are rounded to the nearest full percent. *See id.* § 6621(b)(3) ("Any such rate shall be rounded to the nearest full percent . . . ."). The court takes judicial notice that the applicable rate for October and November of 2004 was 5%, *i.e.*, a federal short-term rate rounded to 2% plus three percentage points, and that the applicable rate for January, February, and March of 2007 was 8%, *i.e.*, a federal short-term rate rounded to 5% plus three percentage points. *See Scalamandre v. Oxford Health Plans (N.Y.), Inc.*, 823 F. Supp. 1050, 1064 (E.D.N.Y. 1993) (stating that simple interest applies and interest is not to be compounded daily) (comparing §§ 6621 and 6622). The court, therefore, finds that the ERISA Plaintiffs are entitled to interest on the unpaid contributions consistent with 26 U.S.C. § 6621. 29 U.S.C. § 1132(g)(2)(B).

The court also finds that Plaintiffs Local 405 and NECA are entitled to interest on the unpaid contributions. *Higdon Const.*, 739 F.2d at 283 (holding that it is within the court's discretion whether to award prejudgment interest in a § 185 action); *see also Blau*,

---

[7] Rettig suggests in the Rettig Affidavit that interest begins to accrue upon unpaid contributions on the 25th day following the calendar month of contribution. However, the 2004 Collective Bargaining Agreement makes plain that all contributions shall be made "on or before the twenty-fifth (25th) day following the end of each calendar month." Taylor Affidavit at 6. Similarly, the 2006 Collective Bargaining Agreement states that all contributions are due "by the twenty-fifth day following the end of each calendar month . . . ." Taylor Affidavit at 13. Therefore, contributions only become delinquent, and interest begins to accrue thereon, after the 25th day following the end of the calendar month of contribution.

368 U.S. at 414 (noting that in absence of statutory directive, award of prejudgment interest is within discretion of the court). The court takes the view that "[i]n awarding prejudgment interest it is appropriate for the [c]ourt to allow prejudgment interest at such a rate as will compensate [§ 185 plaintiffs] for the delay in the receipt of their money." *Weatherall Concrete,* 468 F. Supp. at 1171. Defendant has failed to pay contributions under unambiguous contractual provisions; in some cases the delinquency period exceeds three years. As tangible losses, interest ought to apply, *see Colon Velez*, 957 F.2d at 941 (holding that prejudgment interest appropriately applies to "tangible losses" in a successful § 185 suit), and the court finds no reason to apply a different rate for the unpaid contributions to Plaintiffs Local 405 and NECA than it does to the ERISA Plaintiffs.

As to the Health & Welfare Fund, Defendant owes prejudgment interest on the January of 2007 delinquent contribution of $847.87, in the amount of $60.20, based upon an interest rate of 8% from February 26, 2007 to January 15, 2008. Defendant owes prejudgment interest on the February of 2007 delinquent contribution of $1,146.10, in the amount of $74.34, based upon an interest rate of 8% from March 26, 2007 to January 15, 2008. Defendant owes prejudgment interest on the March of 2007 delinquent contribution of $1,264.18, in the amount of $73.41, based upon an interest rate of 8% from April 26, 2007 to January 15, 2008.

As to the Savings Fund, Defendant owes prejudgment interest on the January of 2007 delinquent contribution of $723.88, in the amount of $51.40, based upon an interest rate of 8% from February 26, 2007 to January 15, 2008. Defendant owes prejudgment interest on the February of 2007 delinquent contribution of $749.11, in the amount of $48.59, based upon an interest rate of 8% from March 26, 2007 to January 15, 2008. Defendant owes prejudgment interest on the March of 2007 delinquent contribution of $857.67, in the amount of $49.81, based upon an interest rate of 8% from April 26, 2007 to January 15, 2008.

As to the Education Fund, Defendant owes prejudgment interest on the October of 2004 delinquent contribution of $187.94, in the amount of $29.50, based upon an interest rate of 5% from November 26, 2004 to January 15, 2008. Defendant owes prejudgment interest on the November of 2004 delinquent contribution of $302.65, in the amount of $46.27, based upon an interest rate of 5% from December 26, 2004 to January 15, 2008. Defendant owes prejudgment interest on the February of 2007 delinquent contribution of $101.68, in the amount of $6.60, based upon an interest rate of 8% from March 26, 2007 to January 15, 2008. Defendant owes prejudgment interest on the March of 2007 delinquent contribution of $112.14, in the amount of $6.51, based upon an interest rate of 8% from April 26, 2007 to January 15, 2008.

As to NEBF, Defendant owes prejudgment interest on the October of 2004 delinquent contribution of $343.28, in the amount of $53.88, based upon an interest rate of 5% from November 26, 2004 to January 15, 2008. Defendant owes prejudgment interest on the November of 2004 delinquent contribution of $532.52, in the amount of $81.41, based upon an interest rate of 5% from December 26, 2004 to January 15, 2008. Defendant owes prejudgment interest on the February of 2007 delinquent contribution of $158.68, in the amount of $10.29, based upon an interest rate of 8% from March 26, 2007 to January 15, 2008. Defendant owes prejudgment interest on the March of 2007 delinquent contribution of $175.42, in the amount of $10.19, based upon an interest rate of 8% from April 26, 2007 to January 15, 2008.

As to Local 405, Defendant owes prejudgment interest on the January of 2007 delinquent contribution of $158.09, in the amount of $11.23, based upon an interest rate of 8% from February 26, 2007 to January 15, 2008. Defendant owes prejudgment interest on the February of 2007 delinquent contribution of $211.58, in the amount of $13.72, based upon an interest rate of 8% from March 26, 2007 to January 15, 2008. Defendant owes prejudgment interest on the March of 2007 delinquent contribution of $233.90, in

the amount of $13.58, based upon an interest rate of 8% from April 26, 2007 to January 15, 2008.

As to NECA, Defendant owes prejudgment interest on the October of 2004 delinquent contribution of $168.35, in the amount of $26.43, based upon an interest rate of 5% from November 26, 2004 to January 15, 2008. Defendant owes prejudgment interest on the November of 2004 delinquent contribution of $269.28, in the amount of $41.16, based upon an interest rate of 5% from December 26, 2004 to January 15, 2008. Defendant owes prejudgment interest on the February of 2007 delinquent contribution of $78.01, in the amount of $5.06, based upon an interest rate of 8% from March 26, 2007 to January 15, 2008. Defendant owes prejudgment interest on the March of 2007 delinquent contribution of $86.04, in the amount of $5.00, based upon an interest rate of 8% from April 26, 2007 to January 15, 2008.

The court finds that the total amount of prejudgment interest due in this case is $718.15.

### D.  Penalties on Delinquent Contributions

Plaintiffs seek penalties for the delinquent contributions. The 2004 Collective Bargaining Agreement provides for a $50.00 penalty for each working day of delinquency after the 25th day of the month following the month of the contribution. The 2006 Collective Bargaining Agreement provides for a $50.00 penalty for each calendar day of delinquency after the 25th day of the month following the month of the contribution. However, there is 20% cap on liquidated damages found in § 1132(g)(2)(C)(ii). 29 U.S.C. § 1132(g)(2)(C)(ii); *see, e.g., Int'l Painters*, 239 F. Supp. 2d at 31 n.3 ("Liquidated damages may not be greater than 20 percent of the unpaid contributions."). Given that the penalties proposed by the Collective Bargaining Agreements greatly exceed the statutory cap, Plaintiffs are entitled to penalties of only 20% of the unpaid contributions.

The Application seeks penalties for delinquent contributions to the ERISA Plaintiffs. Applying the statutory formula, the Health & Welfare Fund, which is owed $3,258.15 in

delinquent contributions, is entitled to 20% of such amount in penalties, or $651.63. The Savings Fund, which is owed $2,330.66 in delinquent contributions, is entitled to 20% of such amount in penalties, or $466.13. The Education Fund, which is owed $704.41 in delinquent contributions, is entitled to 20% of such amount in penalties, or $140.88. NEBF, which is owed $1,209.90 in delinquent contributions, is entitled to 20% of such amount in penalties, or $241.98.

Affording the ERISA Plaintiffs all reasonable inferences, *see Au Bon Pain Corp.,* 653 F.2d at 65, the court finds they have proven that they are collectively entitled to $1,500.62 in penalties. 29 U.S.C. § 1132(g)(2)(C)(ii).

### E. Attorney Fees & Costs

In the Motion, Plaintiffs seek $6,332.50 in attorney fees and $428.00 in costs. In the Supplement, Plaintiffs seek $1,041.25 in additional attorney fees. The Fee Affidavit and the Supplement itemize the services billed to the Plaintiffs by date of service, billing attorney, services performed, time expended and attorney's hourly rate. The Fee Affidavit and the Supplement also list the costs incurred by Plaintiffs' counsel. As explained above, the Johansen Affidavit attests to the reasonableness of the per hour rates for the various attorneys, the attorney time expended and the total fees of $6,332.50. The Johansen Affidavit does not take a position on the expenses and costs incurred. The Johansen Affidavit does not consider the fees described in the Supplement.

#### 1. Attorney fees

For successful ERISA claims, the court is required to award Plaintiffs a reasonable attorney fee. *See* 29 U.S.C. § 1132(g)(2)(D) (stating court "shall award . . . reasonable attorney's fees"); *see also Hewitt v. Helms*, 459 U.S. 460, 471 (1983) (remarking that the word "shall" is "language of an unmistakably mandatory character"), *overruled on other grounds by Sandin v. Conner*, 515 U.S. 472, 487 (1995). Under the LMRA, the awarding of attorney fees is within the court's discretion, *Iowa Beef Processors*, 597 F.2d at 1148,

and the court is empowered to do so to achieve the public policy ends of the LMRA, *Young & Hay*, 522 F.2d at 568 ("An award of attorneys fees in a suit brought under [§ 185] constitutes an appropriate item of damage to be awarded by courts in the enforcement of national labor policy . . . ." (Citations and quotations omitted.)).

"The most useful starting point for determining the amount of a reasonable fee is the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate." *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983) (interpreting 42 U.S.C. § 1988). The Eighth Circuit Court of Appeals often follows this "lodestar approach" to determine the amount of attorney fees to which a successful claimant is entitled. *See, e.g., H.J. Inc. v. Flygt Corp.*, 925 F.2d 257, 259 (8th Cir. 1991). "As a general rule, a reasonable hourly rate is the prevailing market rate, that is, 'the ordinary rate for similar work in the community where the case has been litigated.'" *Moysis v. DTG Datanet*, 278 F.3d 819, 828 (8th Cir. 2002) (quoting *Emery v. Hunt*, 272 F.3d 1042, 1047 (8th Cir. 2001)).

"[T]he fee applicant bears the burden of . . . documenting the appropriate hours expended and hourly rates." *Hensley*, 461 U.S. at 437. To meet its burden, the fee applicant must "submit evidence supporting the hours worked and rates claimed." *Id.* at 433. Inadequate documentation or imprecise billing may be a basis for a fee reduction. *Bell v. United Princeton Props., Inc.*, 884 F.2d 713, 715 (3d Cir. 1989). This is so because incomplete or imprecise billing records do not allow for meaningful review of the fee application to determine whether it includes "'excessive, redundant, or otherwise unnecessary' hours and may make it impossible to attribute a particular attorney's specific time to a distinct issue or claim." *H.J.*, 925 F.2d at 260 (quoting *Hensley*, 461 U.S. at 434, 437 & n.12).

The court finds the claimed fees are reasonable. Reviewing the itemized list of expenditures, the Fee Affidavit reveals a $175 per hour rate for Rettig and his partner

Joseph E. Day. The Fee Affidavit proposes a $150 per hour rate for associate Yara Halloush. According to the Fee Affidavit, Day expended 3.80 hours on the case, resulting in attorney fees of $665.00; Rettig expended 29.90 hours, resulting in attorney fees of $5,232.00; and Halloush expended 2.90 hours, resulting in attorney fees of $435.00. Attorney time thus amounts to $6,332.50. The Johansen Affidavit attests to the reasonableness of the per hour rates for the various attorneys, the attorney time expended and the attorney time of $6,332.50. Although the Johansen Affidavit does not opine as to the fees claimed in the Supplement, the Johansen Affidavit's conclusions regarding the reasonableness of the hourly rates supports the awarding of these additional fees. The Supplement describes services rendered by Rettig subsequent to July 31, 2007, namely, 5.95 hours at $175.00 per hour for total fees of $1,041.25.

Accordingly, the court shall award Plaintiffs $7,373.75 as a reasonable attorney fee for the services of Attorneys Rettig, Day and Halloush, pursuant to 29 U.S.C. § 1132(g)(2)(D) and *Iowa Beef Processors*, 597 F.2d at 1148.

### 2. Costs

Under ERISA, the court is required to award Plaintiffs costs. *See* 29 U.S.C. § 1132(g)(2)(D) (stating court "shall award . . . the costs of the action"); *see also Hewitt*, 459 U.S. at 471 (remarking that the word "shall" is "language of an unmistakably mandatory character"). Under the LMRA, the court may in its discretion award Plaintiffs costs. *Iowa Beef Processors*, 597 F.2d at 1148. Plaintiffs request $428.00 in costs. The Fee Affidavit shows that Plaintiffs spent $428.00 on service fees, filing fees and Westlaw research. The court finds these are compensable costs. *See Goss Int'l Corp. v. Tokyo Kikai Seisakusho, Ltd.*, No. C00-35-LRR, 2004 WL 1234130, *6 (N.D. Iowa 2004) (noting that "[r]easonable out-of-pocket expenses incurred by an attorney which normally would be charged to a fee-paying client ordinarily are includable in a statutory award of fees"); *see also id.* at *7 (holding that filing fees are compensable (citing 28 U.S.C. § 1920)).

Accordingly, the court shall award Plaintiffs $428.00 in costs, pursuant to 29 U.S.C. § 1132(g)(2)(D) and *Iowa Beef Processors*, 597 F.2d at 1148.

## IV. CONCLUSION

**IT IS THEREFORE ORDERED THAT:**

(1)    Plaintiffs' Application (docket no. 9) and Motion (docket no. 10) are **GRANTED**;

(2)    The Clerk of Court is directed to enter default judgment in favor of Plaintiffs and against Defendant in the amount of **$33,291.90**; and

(3)    The Clerk of Court is directed to close this case.

**IT IS SO ORDERED.**

**DATED** this 15th day of January, 2008.

LINDA R. READE
CHIEF JUDGE, U.S. DISTRICT COURT
NORTHERN DISTRICT OF IOWA